**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| J. LLOYD INTERNATIONAL, INC., | |
| Plaintiff, | No. 15-CV-74-LRR |
| vs. | **ORDER** |
| SUPER WINGS INTERNATIONAL, LTD., | |
| Defendant. | |
| SUPER WINGS INTERNATIONAL, LTD., | |
| Counter Claimant, | |
| vs. | |
| J. LLOYD INTERNATIONAL, INC., | |
| Counter Defendant. | |

_____

*TABLE OF CONTENTS*

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

      A.     *Keener's Prior Convictions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
      B.     *Non-Ownership of Property* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
      C.     *Financial Condition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
      D.     *Keener's Bankruptcy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
      E.     *Settlement Negotiations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
      F.     *Expert Witness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
      G.     *Non-Expert Testimony Regarding Damages* . . . . . . . . . . . . . . . . **17**
      H.     *Late-Disclosed Exhibits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
      I.      *Parol Evidence Rule and Dora Yip* . . . . . . . . . . . . . . . . . . . . . . **21**

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

# I. INTRODUCTION

The matters before the court are Plaintiff J. Lloyd International, Inc.'s ("JLI") "First Motion in Limine" ("JLI Motion") (docket no. 54) and Defendant Super Wings International ("SWI") "Motions in Limine" ("SWI Motion") (docket no. 55).

# II. RELEVANT PROCEDURAL HISTORY

On August 13, 2015, JLI filed a Complaint (docket no. 2), alleging two claims against SWI: (1) breach of written contract and (2) conversion. On February 25, 2016, SWI filed an Answer (docket no. 31), denying liability and alleging four counterclaims against JLI: (1) a request for declaratory judgment; (2) breach of contract; (3) breach of implied contract; and (4) unjust enrichment. A jury trial is scheduled to begin on January 16, 2017. *See* Feb. 2, 2016 Order (docket no. 27).

On December 8, 2016, JLI filed the JLI Motion and SWI filed the SWI Motion. On December 15, 2016, SWI filed a Resistance ("SWI Resistance") (docket no. 58) to the JLI Motion and JLI filed a Resistance ("JLI Resistance") (docket no. 59) to the SWI Motion. On December 22, 2016, the court held a final pretrial conference ("FPTC"), at which the court heard arguments regarding the parties motions. *See* Dec. 22, 2016 Minute Entry (docket no. 62). The matters are fully submitted and ready for decision.

# III. ANALYSIS

In the JLI Motion, JLI seeks pretrial rulings excluding admission of the following at trial: (1) evidence of prior convictions of JLI's owner, Jody Keener; (2) evidence that JLI does not own the property at issue in the case; (3) evidence of JLI's financial condition; (4) evidence of Keener's involvement in numerous bankruptcy proceedings and (5) evidence of settlement negotiations between JLI and SWI. *See generally* JLI Motion. In the SWI Motion, SWI seeks pretrial rulings excluding admission of the following at trial: (1) opinion testimony from JLI's expert witness regarding lost-profits damages; (2) opinion testimony from Keener regarding property valuation and damages; (3) any exhibits

2

undisclosed prior to JLI's submission of its proposed exhibit list; and (4) evidence of oral statements or other extrinsic evidence relating to the contents of the contract at issue in the case. *See generally* SWI Motion. The court shall address each topic in turn.

### A. *Keener's Prior Convictions*

On November 15, 2016, SWI provided notice to JLI that it intended to introduce evidence at trial of Keener's 1988 "conviction for felony conspiracy to defraud the United States and two violations of misdemeanor willful failure to file federal income taxes for 1981 and 1982," pursuant to Federal Rule of Evidence 609. *See* Ex. 1 to JLI Motion (docket no. 54-1); *see also* SWI Proposed Ex. T (docket no. 58-3) (court records of convictions). Consistent with this notice, SWI listed "Record of Jody Keener Conviction" on the proposed exhibit list that it submitted to JLI. *See* Ex. 2 to JLI Motion (docket no. 54-2) at 3. JLI argues that evidence of Keener's convictions is inadmissible under Rule 609 because the convictions are over ten years old and lack probative value. *See* JLI Motion at 2-3.

Rule 609 addresses the admissibility of a prior criminal conviction for purposes of "attacking a witness's character for truthfulness." Fed. R. Evid. 609(a). Under Rule 609, where a witness's prior criminal conviction is over ten years old, "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). "Rule 609(b) effectively establishes 'a rebuttable presumption against the admissibility of prior convictions more than ten years old.'" *United States v. Stoltz*, 683 F.3d 934, 939-40 (8th Cir. 2012) (quoting *United States v. Felix*, 867 F.2d 1068, 1073 (8th Cir. 1989)); *see also United States v. Hayes*, 87 Fed. App'x 603, 604 (8th Cir. 2004); *United States v. Keene*, 915 F.2d 1164, 1169 (8th Cir. 1990). In view of Rule 609(b)'s restrictions, "convictions over 10 years old will be

admitted very rarely and only in exceptional circumstances." *United States v. Jasso*, 701 F.3d 314, 317 (8th Cir. 2012) (quoting Fed. R. Evid. 609, advisory committee's note on 1974 amendments); *see also Stoltz*, 683 F.3d at 940; *Hayes*, 87 Fed. App'x at 604.

SWI acknowledges that Keener's convictions are over ten years old and subject to Rule 609(b). *See* Ex. 1 to JLI Motion (providing notice of intent to use the convictions pursuant to Rule 609(b)); *see also* SWI Resistance at 1-2. As such, the convictions are only admissible if SWI shows exceptional circumstances sufficient to overcome Rule 609(b)'s rebuttable presumption against admission. SWI urges two grounds for admission: (1) Keener opened the door to introduction of the convictions and (2) Keener has made inconsistent statements regarding the convictions. SWI Resistance at 2-3.

SWI claims that JLI opened the door to evidence of the convictions when Keener gave the following testimony during a deposition:

> Q.    Have you ever been convicted of a crime other than a misdemeanor?
> A.    No, not that I know of.
> Q.    Have you ever been convicted of a felony?
> A.    I don't think so.

SWI Resistance at 2. "The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." *United States v. Bagola*, 796 F.3d 903, 909 (8th Cir. 2015) (quoting *United States v. Durham*, 868 F.2d 1010, 1012 (8th Cir. 1989)). Whatever Keener's testimony during his deposition, such testimony did not occur on direct examination during the course of trial. Therefore, it poses no risk of presenting the jury with "a misleading inference" that would entitle SWI to introduce otherwise inadmissible evidence on cross-examination "to clarify or rebut any false impression." *See United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000). JLI has not opened the door to admission of Keener's convictions.

4

SWI nevertheless argues that Keener's deposition testimony amounts to a prior inconsistent statement, and that it may cross-examine Keener regarding his convictions to impeach his credibility on those grounds. *See* SWI Resistance at 3. "Prior inconsistent statements by a witness . . . are competent as substantive evidence if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the prior inconsistent statement was given under oath at a trial, hearing, or other proceeding." *United States v. Dean*, 823 F.3d 422, 426 (8th Cir. 2016) (internal quotation marks and alteration omitted) (quoting *United States v. Wilson*, 806 F.2d 171, 175-76 (8th Cir. 1986)). "The district court has considerable discretion in determining whether prior statements are inconsistent with trial testimony." *Id.* (quoting *United States v. Matlock*, 109 F.3d 1313, 1319 (8th Cir. 1997)). As these passages make clear, the rule permitting admission of a prior inconsistent statement does not allow admission of a witness's prior statement simply because it is contrary to the truth—it allows admission of a witness's prior statement where such statement is inconsistent with the witness's testimony at trial. Absent Keener testifying at trial regarding his convictions, his inconsistent statements during his deposition are inadmissible. In any event, the mere fact that Keener has prior convictions is not itself a prior inconsistent statement subject to the rule.

The court recognizes that Keener will be a central witness at trial and that his credibility is, therefore, probative. However, while prior convictions are generally probative of credibility, such probative value is limited in this case by the fact that the convictions at issue are nearly thirty years old. In performing the requisite balancing required under Rule 609(b), the court cannot conclude that the probative value of the convictions "substantially outweighs" their significant prejudicial effect. Therefore, evidence of the convictions is inadmissible. Accordingly, the court shall grant the JLI Motion with respect to exclusion of evidence of Keener's prior convictions.

## B. Non-Ownership of Property

In 2012, in a prior proceeding involving the same parties and players, Chief Magistrate Judge Jon S. Scoles determined that, pursuant to a 2008 agreement between JLI and SWI, the toy molds and tooling at issue belonged to JLI despite being in SWI's physical possession. *See Super Wings Int'l, Ltd. v. Keener*, 09-CV-115-JSS, 2012 WL 252638, at *13 (N.D. Iowa Jan. 25, 2012) ("JLI may still obtain the molds and tooling by providing Super Wings with appropriate notice regarding the specific molds and tooling to be released, together with the identification of the party authorized to receive the same."). In 2011, Keener obtained a default judgment against JLI in state court. *See Jody Keener v. J. Lloyd Int'l, Inc.*, 06571 LACV071352 (Linn Cty. Iowa 2011). In 2014, in partial satisfaction of the default judgment, JLI purportedly assigned its rights to the toy molds and tooling to Keener. *See generally id.* This purported assignment occurred during the pendency of involuntary bankruptcy proceedings against Keener. *See* "Ruling on Debtor's Motion to Compromise" ("Compromise Ruling"), In re *Jody Keener* ("*Keener* Bankruptcy"), Bankr. No. 14-01169 (docket no. 538) (Bankr. N.D. Iowa Dec. 29, 2015) at 13 ("Super Wings filed its involuntary case against Jody Keener in July 2013. . . . In March 2014, however, JLI 'settled' with Keener. In this settlement, JLI assigned, transferred, and conveyed title to the molds and tooling to Keener personally."). Upon SWI's motion in the bankruptcy proceedings, Chief Bankruptcy Judge Thad Collins held that the assignment of rights was a collusive attempt "to bring the molds under the Bankruptcy Code's automatic stay protection and make them property of [Keener's] estate," thereby invoking federal bankruptcy jurisdiction in violation of 28 U.S.C. § 1359. "Memorandum and Order Re: Motion to Amend and Alter Ruling" ("Collusion Ruling"), *Keener v. Super Wings Int'l, Ltd.* (In re *Jody L. Keener*) ("*Keener* Adversary"), Bankr. No. 14-01169, Adversary No. 14-09061, 2015 WL 5118691, at *5 (Bankr. N.D. Iowa Aug. 28, 2015). Subsequently in the bankruptcy proceedings, Keener filed a motion to

6

compromise, seeking court approval of an identical purported assignment of rights, which was resisted by SWI. *See* Compromise Ruling at 1-2. After chronicling the chain of events surrounding the multiple claims of purported assignments of rights from JLI to Keener, Judge Collins refused to approve any such assignment: "Based on all of this, the Court must find and conclude that JLI—not Keener personally—continues to own and assert *all* rights in the molds." *Id.* at 15.

The parties again raised the issue of the purported assignment of rights in the instant case. On September 4, 2015, SWI moved to dismiss the Complaint on grounds that JLI's claims were barred by judicial estoppel because its allegations in the Complaint were inconsistent with its prior arguments in favor of the assignment during the bankruptcy proceedings. *See* Brief in Support of SWI Motion to Dismiss or to Quash Service (docket no. 9-4) 25-28. The court denied the motion. *See* Feb. 8, 2016 Order (docket no. 28) at 13-14 (denying the SWI Motion to Dismiss as to its judicial estoppel argument). On November 15, 2016, SWI again moved to dismiss the Complaint, this time on grounds that JLI did not have any rights in the underlying molds and tooling—and, as such, was not the real party in interest—citing the 2014 assignment of rights to Keener. *See generally* Rule 17 Motion to Dismiss (docket no. 50). The court denied SWI's second motion to dismiss on grounds that it was untimely and that it provided no basis for the court to determine the validity (or invalidity) of the purported assignment. *See* Dec. 6, 2016 Order (docket no. 53) at 3. In neither of its orders regarding SWI's motions to dismiss did the court determine whether such assignment was in fact valid or invalid. *See id.*; *see also* Feb. 8, 2016 Order at 13-14.

JLI argues that any evidence that JLI is not the owner of the toy molds and tooling at issue—including evidence of the 2014 assignment—should be excluded because: (1) SWI is judicially and collaterally estopped from challenging JLI's ownership of the toy molds and tooling; (2) such evidence is irrelevant; and (3) even if deemed relevant, its

probative value is nevertheless substantially outweighed by unfair prejudice and other dangers. *See* JLI Motion at 4.

"Under Iowa law, judicial estoppel 'prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding.'" *Spencer v. Annett Holdings, Inc.*, 757 F.3d 790, 797 (8th Cir. 2014) (quoting *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006)). The Supreme Court has observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (alteration omitted) (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). However, Iowa courts have recognized that: (1) the positions taken must be inconsistent to a degree that creates "the perception that at least one court has been misled," *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 196 (Iowa 2007) (quoting *Vennerberg Farms, Inc. v. IGF Insurance Co.*, 405 N.W.2d 810, 814 (Iowa 1987)); (2) there must have been "judicial acceptance of the inconsistent position" in the prior proceeding, *Id.* (quoting *Vennerberg Farms*, 405 N.W.2d at 814); and (3) the party invoking the doctrine must be prejudiced by its opponent's assertion of the inconsistent positions, *Winnebago Indus.*, 727 N.W.2d at 573 (quoting *Wilson v. Liberty Mut. Grp.*, 666 N.W.2d 163, 166 (Iowa 2003)). *Accord New Hampshire*, 532 U.S. at 750-51. Iowa courts are "flexible" in applying the doctrine of judicial estoppel to "achieve its goal" of protecting the integrity of the fact-finding process. *Tyson Foods, Inc.*, 740 N.W.2d at 196.

A review of the bankruptcy proceedings reveals numerous instances wherein SWI unequivocally asserted that the 2014 assignment was invalid and that all rights to the toy molds and tooling remained with JLI, including the following:

- "The release, transfer, and assignment . . . were void *ab initio*, and were and are of no force and effect."

8

Defendant's Motion to Dismiss, *Keener* Adversary (docket no. 14) ¶ 12.

- "As a result, absent the alleged assignment from J. Lloyd, the molds were not and are not and have never been owned by [Keener]." *Id.* ¶ 13.

- "The Partial Release was therefore void *ab initio*, and the corresponding assignment by J. Lloyd to Keener of the molds allegedly owned by J. Lloyd was likewise void and of no force and effect." Defendant's Brief and Memorandum in Support of Motion to Dismiss, *Keener* Adversary (docket no. 15) at 1.

- "The March 31, 2014 transaction between [Keener] and J. Lloyd therefore did not occur, as a matter of law. The molds are never and were never owned by [Keener], but remain the property of J. Lloyd." *Id.* at 4.

As these assertions reveal, SWI's position in the bankruptcy proceedings was wholly inconsistent with any defense in the instant case that JLI does not own the toy molds and tooling because it assigned its rights to Keener. Likewise, adoption of SWI's inconsistent position would undoubtedly result in prejudice to JLI, insofar as a jury finding that JLI has no interest in the toy molds and tooling would preclude JLI from recovery.

More complicated is the issue of whether there was judicial acceptance of SWI's inconsistent position in the bankruptcy proceedings. The court addressed a version of this issue in its February 8, 2016 Order denying SWI's Motion to Dismiss. In the February 8, 2016 Order, the court concluded that—at that time—there had been no judicial acceptance of the validity or invalidity of the assignment by the bankruptcy court. Examining the Collusion Ruling, the court determined that the bankruptcy court did not "decid[e] whether the assignment itself was valid." Feb. 8, 2016 Order at 14. More specifically, the court recognized that "[t]he bankruptcy action was not dismissed because the bankruptcy court relied in any way on the legal validity or scope of the assignment of the molds and tooling," but was instead dismissed because "the bankruptcy court found

that Keener failed to demonstrate that the assignment was valid for purposes of bankruptcy jurisdiction." *Id.* The court's February 8, 2016 Order relied solely on the Collusion Ruling. *See id.* at 4. However, the bankruptcy proceedings continued to progress during the court's consideration of SWI's Motion to Dismiss. Notably, the Compromise Ruling was eventually filed on December 29, 2015—after briefing on SWI's Motion to Dismiss was completed. Because issues involving the assignment continued to develop in the bankruptcy court after briefing was completed, the court's discussion of judicial estoppel in its February 8, 2016 Order was necessarily limited to the state of the bankruptcy proceedings as it existed in early October of 2015 when briefing concluded. The court has had no previous occasion to decide whether the subsequent Compromise Ruling addressed the validity of the assignment.

In the Compromise Ruling, Judge Collins addressed the validity—not the jurisdictional effects—of the assignment. Specifically, he considered whether to grant "approval of [a] transaction that is identical to the one that [the bankruptcy court] previously found to be improper and collusive." Compromise Ruling at 2. In other words, Judge Collins addressed the validity of a proposed settlement that operated identically to the assignment: if one was invalid, so was the other. SWI resisted approval of the settlement, arguing that the Collusion Ruling precluded any subsequent determination that the settlement was valid. *See generally* Motion for Summary Judgment, *Keener* Bankruptcy (docket no. 468). By doing so, SWI effectively revived its prior position that the assignment was invalid and, therefore, so too was the identical settlement invalid. Judge Collins refused to approve the proposed settlement, and definitively stated that "JLI—not Keener personally—continues to own and assert *all* rights in the molds." Compromise Ruling at 15. The import of Judge Collins's holding is clear: despite the desired effects of the assignment and proposed settlement to transfer the toy molds and tooling from JLI to Keener, they had no such force and effect. This was precisely the

10

outcome urged by SWI throughout the bankruptcy proceedings. As such, there was judicial acceptance of SWI's inconsistent position in the prior proceedings. *See Tyson Foods, Inc.*, 740 N.W.2d at 198 (stating that judicial acceptance occurs when the inconsistent position "was material to the holding in the prior litigation"); *see also id.* at 196 (stating that the doctrine of judicial estoppel has "flexible parameters . . . to achieve its goal"). Therefore, the court finds that SWI is judicially estopped from presenting evidence that JLI does not own the toy molds and tooling.

In any event, even if SWI is not judicially estopped from presenting such evidence, the court shall nevertheless exclude the evidence pursuant to Federal Rule of Evidence 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the court's discussion above demonstrates by example, presentation of evidence that JLI does not own the toy molds and tooling runs the substantial risk of straying into prior arguments, proceedings and judicial rulings spanning years of litigation between the parties. The danger that such an outcome will confuse the issues and mislead the jury substantially outweighs the probative value of the evidence, which the court finds to be very slight due to the questionable origins of the purported assignment and the bankruptcy court's decision not to recognize the assignment. *See United States v. McQuarry*, 816 F.3d 1054, 1058 (8th Cir. 2016) (affirming exclusion of evidence under Rule 403 where the district court "reasonably fear[ed]" that the evidence would mislead and confuse the jury and where there were concerns regarding the quality of the proposed evidence). Therefore, evidence that JLI does not own the toy molds and tooling is excluded pursuant to Rule 403. Accordingly, the court shall grant the JLI Motion with respect to exclusion of evidence that JLI does not own the toy molds and tooling at issue in this case.

11

### C. Financial Condition

JLI argues that evidence of its financial condition—as well as the financial conditions of Keener and any companies affiliated with Keener or JLI—must be excluded because it is not relevant. JLI Motion at 5. In the alternative, JLI argues that such evidence must be excluded pursuant to Rule 403. *Id.*

Relevant evidence is generally admissible subject to certain exceptions, including Rule 403, but "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence of the financial condition of a plaintiff may be relevant to the plaintiff's proof of damages. *See West Plains, L.L.C. v. Retzlaff Grain Co., Inc.*, 8:13CV47, 2016 WL 165698, at *7-8 (D. Neb. Jan. 13, 2016) ("While evidence of West Plains, LLC's overall financial condition may be irrelevant with respect to some methods of measuring damages, its overall condition may be relevant to other damages calculations, such as loss of overall value."). Here, JLI alleges that SWI's actions resulted in damages to "its business and property." *See, e.g.*, Complaint ¶ 42. As such, it is likely that JLI's finances will be relevant to the issue of damages and, if relevant, they will likely have significant probative value and will not be excluded under Rule 403 balancing. Accordingly, the court shall deny the JLI Motion with respect to exclusion of evidence regarding JLI's financial condition.

### D. Keener's Bankruptcy

JLI argues that evidence of Keener's bankruptcy proceedings must be excluded because it is not relevant. JLI Motion at 5-6. In the alternative, JLI argues that such evidence must be excluded pursuant to Rule 403. *Id.*

In a vacuum, the mere fact of Keener's bankruptcy proceedings is irrelevant to the contract-related claims at issue. However, the bankruptcy proceedings were largely related

to the years-long legal dispute between JLI and SWI, such that certain elements of the bankruptcy proceedings—for example, testimony or property valuations—may become relevant to the claims at issue. *See, e.g.*, *United States v. Anderson*, 783 F.3d 727, 745 (8th Cir. 2015) (affirming admission of testimony from a bankruptcy proceeding where the testimony shed light on a material issue); *United States v. Hawley*, No. C 06-4087-MWB, 2011 WL 10483390, at *23 (N.D. Iowa Oct. 13, 2011) (allowing admission of inconsistent testimony from a bankruptcy proceeding for purposes of impeachment). Assuming that such evidence will be relevant, so too will the fact of the bankruptcy proceedings necessarily become relevant. *See Johnson v. Rockwell Automation, Inc.*, No. 1:06CV00017 JLH, 2009 WL 1748344, at *4 (E.D. Ark. Jun. 17, 2009). Further, while the court recognizes the potential probative value of the evidence, the court cannot determine any danger of unfair prejudice at this stage of the proceedings. Accordingly, the court shall deny the JLI Motion with respect to exclusion of evidence regarding JLI's financial condition.

### E. Settlement Negotiations

JLI argues that evidence regarding "settlement negotiations, offers or demands" between JLI and SWI must be excluded pursuant to Rule 408. JLI Motion at 6. JLI's argument does not extend to "evidence regarding its repeated efforts to pick up the molds and tooling from Super Wings' facility, as well as the parties' communications regarding that subject." *Id.* SWI does not generally resist the JLI Motion as to Rule 408 evidence, but argues that a redacted version of particular correspondence from JLI's prior counsel fits within the category of communications that JLI does not seek to exclude and should, therefore, be admissible. *See* SWI Resistance at 8; *see also* SWI Proposed Exhibit D (docket no. 58-1).

Rule 408 prohibits admission of evidence relating to settlement negotiations between parties where such evidence is used "to prove or disprove the validity or amount of a

Case 1:15-cv-00074-LRR   Document 64   Filed 12/22/16   Page 13 of 24

disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Rule 408 does not prohibit evidence relating to proposed compromises where such evidence is used "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

In light of Rule 408, any evidence relating to settlement negotiations will be excluded if introduced for a prohibited purpose. However, based on the parties' representations, the court does not view evidence of communications and efforts regarding collection of the toy molds and tooling to be evidence of "furnishing, promising, or offering . . . a valuable consideration in compromising . . . the claim" or "conduct or . . . statement[s] made during compromise negotiations about the claim." Fed. R. Evid. 408(a). As such, evidence of those matters shall not be excludable under Rule 408. Regarding the specific correspondence identified as SWI Proposed Exhibit D, if redacted in the manner suggested by SWI, *see* SWI Resistance at 8 n.5, the court finds the evidence to belong to the same category of communications and efforts regarding collection of the toy molds and tooling. Therefore, SWI Proposed Exhibit D is not excludable under Rule 408. Accordingly, the court shall grant the JLI Motion with respect to exclusion of evidence regarding settlement negotiations pursuant to Rule 408.

### F. Expert Witness

SWI argues that the testimony of JLI's expert witness, Jeff Anderson, must be excluded. *See* Brief in Support of SWI Motion ("SWI Brief") (docket no. 55-1) at 2-13.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 stresses 'scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission.'" *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594-95 (1993)). Therefore, the court "must ensure that 'all scientific testimony is both reliable and relevant.'" *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" *Id.* (quoting *Marmo*, 457 F.3d at 757). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* "'Principles and methodology, not the conclusions they generate' should be the focus of the analysis." *Kozlov*, 818 F.3d at 394 (alterations omitted) (quoting *Daubert*, 509 U.S. at 595). "Generally, 'the factual basis of an expert opinion goes to credibility of the testimony, not admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012) (quoting *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)). "However, 'if the expert's opinion is so fundamentally unsupported that

15

it can offer no assistance to the fact-finder, it must be excluded.'" *Id.* (alteration omitted) (quoting *Neb. Plastics*, 408 F.3d at 416). "[R]ejection of expert testimony is the exception rather than the rule." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quoting Fed. R. Evid. 702 advisory committee's note).

Anderson's testimony will consist of his opinion regarding JLI's lost-profit damages resulting from SWI's alleged refusal to return the toy molds and tooling. *See* Ex. A to SWI Motion ("Expert Report") (docket no. 55-2) at 3. There does not appear to be any dispute as to Anderson's personal qualifications as an expert. *See also id.* at 3-4 (summarizing Anderson's qualifications). Instead, SWI argues that, in performing his damages analysis, Anderson uncritically relied on suspect financial data provided by Keener while simultaneously failing to account for market conditions and certain other variables. *See* SWI Brief at 4-13. SWI characterizes these purported shortcomings as creating "an entirely new, untested and unreliable manner of calculating damages." *Id.* at 5. However, SWI's concerns are more appropriately characterized as a disagreement with Anderson's underlying assumptions and the reliability of the financial data provided by Keener. For example, SWI expresses concerns with the following: (1) Anderson's assumption of steady revenue growth during the recession, *id.* at 5; (2) Anderson's reliance on Keener's financial data, despite Keener's failure to submit certain requested documents, *id.* at 6; (3) Anderson's assumption that Keener's characterization of non-recurring expenses was accurate, despite not explaining to Keener what expenses are properly categorized as "non-recurring," *id.* at 6-9; (4) Anderson's failure to consider market-specific conditions of the toy industry, as opposed to the general economy, *id.* at 10-11; and (5) Anderson's reliance on JLI's overall financial outlook, rather than its outlook as confined to its ownership of the toy molds and tooling at issue, *id.* at 11-12. These concerns all go toward the factual basis and professional assumptions underpinning Anderson's opinion and, as such, they do not generally warrant exclusion. *See David E.*

16

*Watson, P.C.*, 668 F.3d at 1015 ("[M]ere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." (quoting *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007))). Nor is Anderson's opinion so "excessively speculative or unsupported by sufficient facts" that it must be excluded. *See Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (quoting *Barrett*, 606 F.3d at 981). While SWI has identified potential issues with the quality of data that Anderson relied upon, the Expert Report establishes that his opinion was nevertheless supported by substantial financial data. *See* Expert Report at 21-22 (list of documents relied upon); *see also* Ex. C to SWI Motion (financial documents). As such, Anderson's testimony shall be admissible at trial. Accordingly, the court shall deny the SWI Motion with respect to exclusion of testimony by JLI's expert witness.

### G. *Non-Expert Testimony Regarding Damages*

SWI argues that any testimony regarding the value of the toy molds and tooling, and the damages resulting from SWI's alleged role in their unavailability to JLI, must be excluded if tendered by a non-expert witness—namely, Keener. *See* SWI Brief at 13-19. JLI argues that Keener is qualified to provide opinion testimony regarding the tool values and damages pursuant to Rule 701. *See* JLI Resistance at 5-9.

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "A witness may provide lay opinion testimony 'about facts within his or her range of generalized knowledge, experience, and perception.'" *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (quoting *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003)). "[P]erceptions based on industry experience [are] sufficient foundation for lay opinion testimony." *Id.* (first alteration in original) (quoting

*Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004-05 (8th Cir. 1986)); *see also Allied Sys., Ltd. v. Teamsters Auto. Transp. Chauffeurs, Demonstrators & Helpers, Local 604*, 304 F.3d 785, 792 (8th Cir. 2002) ("Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience is a sufficient foundation for lay opinion testimony." (quoting *Burlington N. R.R. Co.*, 802 F.2d at 1004-05)). "Determining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion." *United States v. STABL, Inc.*, 800 F.3d 476, 486 (8th Cir. 2015).

JLI intends to introduce lay opinion testimony from Keener as to damages arising from the following: "[h]istorical cost acquisition," "[s]ale value today of molds and tooling in original condition," "[s]crap value" of the molds and tooling and "[l]ost business opportunity." *See* Ex. F to SWI Motion (docket no. 55-7) at 3-4. Keener estimates that SWI retains possession of approximately 3,000 tools that belong to JLI. *See* Ex. D to SWI Motion (docket no. 55-5) at 5 ("Q. But we're talking about 3,000 or so specific tools. A. We narrowed the number down to 3,000."). To arrive at the historical cost acquisition value of the molds and tooling in SWI's possession, Keener accounted for JLI's $8 million acquisition of an entity called Toy Zone—$4 million of which went toward tools—and Keener's estimate that the other tools held by SWI have acquisition costs of $15 million. *See id.* at 3-4. To calculate the sale value of the 3,000 tools, Keener multiplied 3,000 by the average liquidation price for tools like the ones at issue and adjusted the total value downward to reach a "conservative" valuation of $15 million. *See id.* at 6, 9-10, 14. Likewise, to calculate the scrap value of the tools, Keener multiplied the estimated weight of the 3,000 tools by the expected scrap value for the raw materials of the tools, arriving at a $4 million value in 2012 and a $1 million present value, *see* Ex. F to SWI Motion at 4—where the $3 million difference presumably results from fluctuation in the price per pound of scrap metal. *See* Ex. D to SWI Motion at 5-6, 15. Lastly, to calculate lost

18

business opportunities, Keener recounted several of JLI's licensing contracts and purchase orders from numerous entities that he could not satisfy due to his inability to use the tools for production. *See id.* at 14-17. Keener's opinion on these values stems from his role as president and owner of JLI, in which capacity he has bought molds and tooling on behalf of the company "for thirty years." *See id.* at 5.

With respect to Keener's opinion as to the historical cost acquisition of the tools, testimony regarding such costs do not appear in great detail in the portions of Keener's deposition attached to the parties' materials. However, as president and owner of JLI at the time when such tools were acquired, the nature and extent of those costs would necessarily be known to Keener. Therefore, Keener's role at JLI provides sufficient foundation for him to provide lay opinion testimony as to damages associated with historical cost acquisition. *See Hot Stuff Foods, LLC v. Houston Cas. Co.*, 771 F.3d 1071, 1079 (8th Cir. 2014) ("[W]e will not reverse a district court for admitting testimony by a business owner or officer regarding lost profits when his 'experience in the business provided the foundation for all the specifics to which he testified.'" (quoting *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 837 (8th Cir. 2005))). With respect to Keener's opinion as to the sale and scrap values of the tools, the court finds such estimated valuations to be informed by Keener's substantial experience in the toy manufacturing industry. *See, e.g.*, *US Salt, Inc.*, 563 F.3d at 690; *Allied Sys., Ltd.*, 304 F.3d at 792. While the estimates may not be calculated with precision, Keener's averaging calculations reflect "a process of reasoning familiar in everyday life"—a hallmark of a lay witness opinion, rather than an opinion of an expert or specialist. Fed. R. Evid. 701, advisory committee's notes for the 2000 amendments (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)); *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (finding the simple averaging of figures for purposes of damages calculations to be "aptly characterized as a lay opinion" rather than an expert opinion

(quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005))). Therefore, Keener may provide lay opinion testimony as to damages associated with the tools' sale and scrap values. With respect to Keener's opinion as to lost business opportunities, the court finds his ability to cite specific examples of JLI's lost opportunities, as well as approximate dollar values associated with the lost opportunities and his aforementioned experience in the industry, to provide a personal knowledge basis for the estimated losses. *See US Salt, Inc.*, 563 F.3d at 690 (finding that the inability to "identify any customer interested in buying . . . a specific amount of [products] at a specific price" and the plaintiff's lack of recent activity in the market render opinion testimony by the plaintiff's president inadmissible under Rule 701, but noting that "written commitments from a[] customer as to the price it would pay" or "recent experience within the relevant market" would support admissibility); *see also York v. City of Council Bluffs*, 471 N.W.2d 836, 840 (Iowa 1991) (recognizing that lost profit calculations are permissible "so long as the profits are not based on conjecture and speculation"). Therefore, Keener may provide lay opinion testimony as to damages associated with JLI's lost business opportunities. In sum, the purported flaws that SWI identifies with Keener's valuations do not implicate Rule 701's parameters for admissibility, although they are subject to exploration on cross-examination. Accordingly, the court shall deny the SWI Motion with respect to exclusion of lay opinion testimony from Keener.

### H. Late-Disclosed Exhibits

SWI argues that certain exhibits listed by JLI on its proposed Exhibit List, which purport to reflect documentation of lost business opportunities with Wal-Mart, must be excluded as untimely disclosed. SWI Brief at 19. JLI argues that the exhibits in question must not be excluded because they amount to supplementary materials provided in response to requests made by SWI during Keener's deposition. JLI Resistance at 11.

Keener was deposed on November 11, 2016. *See* Ex. D to SWI Motion at 1; Ex. 7 to JLI Motion (docket no. 59-7) at 1. During the deposition, he was asked about certain business opportunities that JLI lost due to SWI's possession of JLI's toy molds and tooling, including opportunities with Wal-Mart. *See* Ex. 7 to JLI Motion at 7-8. Keener acknowledged that JLI had not produced purchase orders from Wal-Mart during the instant litigation. *Id.* at 8. On November 27, 2016, SWI requested "follow-up to Mr. Keener's deposition." *See* Ex. E to SWI Motion (docket no. 55-6) at 1; *see also* JLI Resistance at 11. On December 6, 2016, JLI responded to SWI's request by submitting the exhibits now challenged by SWI. *See* JLI Resistance at 11; *see also* Ex. E to SWI Motion at 1 (referencing "enclosed materials" responsive to SWI's request for follow-up items). In light of SWI's affirmative request for the materials in question, and JLI's timely compliance, the court sees no impropriety warranting exclusion. *See* Fed. R. Civ. P. 26(e) (providing for a duty to supplement discovery "in a timely manner"). Both parties are on notice of these documents, and their admission will result in no unfair surprise to SWI. Accordingly, the court shall deny the SWI Motion with respect to exclusion of the documentation of JLI's lost business opportunities with Wal-Mart.

## I. Parol Evidence Rule and Dora Yip

SWI anticipates that JLI will introduce statements made by Wai Har ("Dora") Yip purporting to alter the meaning of the 2008 agreement between the parties that created the contractual obligations at issue in this case. *See* SWI Motion at 20-21. SWI argues that evidence of such statements must be excluded pursuant to the parol evidence rule and pursuant to the rule against hearsay. *See* SWI Brief at 19-20. JLI argues that it will introduce evidence that Yip was an owner of SWI, thus rendering her statements non-hearsay, and further argues that it is premature to exclude evidence of Yip's statements at this stage of the proceedings. *See* JLI Resistance at 12-13.

21

"When an agreement is fully integrated, the parol-evidence rule forbids the use of extrinsic evidence introduced solely to vary, add to, or subtract from the agreement." *C & J Vantage Leasing, Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). "When the parties adopt a writing or writings as the final and complete expression of their agreement, the agreement is fully integrated." *Id.* An agreement will be considered fully integrated if it is a "handcrafted contract [that] contains an integration clause, where the parties were sophisticated business persons represented by counsel and of equal bargaining strength, and where the terms of the alleged oral agreement reasonably would be expected to be included in the . . . agreement." *Whalen v. Connelly*, 545 N.W.2d 284, 291 (Iowa 1996) (second alteration in original) (quoting *Montgomery Props. Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 476 (Iowa 1981)). Even where an agreement is fully integrated, "the parol-evidence rule does not prohibit the introduction of extrinsic evidence to show 'the situation of the parties, attendant circumstances, and the objects [that the parties] were striving to attain.'" *C & J Vantage*, 795 N.W.2d at 85 (quoting *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984)). Additionally, "[a]n integrated contract can contain an implicit, unstated, but necessary term." *Alta Vista Props., LLC v. Mauer Vision Center, PC*, 855 N.W.2d 722, 729 (Iowa 2014) (quoting *Acoustic Processing Tech., Inc. v. KDH Elec. Sys. Inc.*, 697 F. Supp. 2d 146, 161 (D. Me. 2010)).

The 2008 agreement includes an integration clause that states: "No amendment, waiver, change or modification of any of the terms, provisions or conditions of this Agreement shall be effective unless made in writing and signed or initiated by the parties or by their duly authorized agents." Ex. 6 to SWI Resistance (docket no. 59-6) at 2. JLI does not argue that the clause fails to fully integrate the agreement, and because of the presence of the clause and the relative sophistication and industry experience of the parties, the clause must be understood to have its desired effect. However, because SWI can do no more than speculate as to what extrinsic evidence JLI seeks to produce, and because

extrinsic evidence would be admissible for purposes unrelated to purported modification of the agreement, *see C & J Vantage*, 795 N.W.2d at 85; *Alta Vista*, 855 N.W.2d at 729, at this stage in the proceedings, the court declines to broadly exclude any such extrinsic evidence relating to the 2008 agreement.

However, even if the parol evidence rule does not apply to potential testimony regarding statements by Yip, such statements may nevertheless be subject to exclusion pursuant to the rule against hearsay. Hearsay is inadmissible at trial, subject to certain exceptions. Fed. R. Evid. 802. "Hearsay" refers to a declarant's out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The proponent of the out-of-court statement bears the burden of showing the admissibility of the statement. *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 636 (8th Cir. 2007). With respect to admissibility of statements by an opposing party's agent, "circumstantial evidence may establish the scope, as well as the existence, of the agency relationship." *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992); *accord Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 93 (D.N.H. 2009); *Becton v. Starbucks Corp.*, 491 F. Supp. 2d 737, 741 (S.D. Ohio 2007); *Miller v. TGI Friday's, Inc.*, No. 05 C 6445, 2007 WL 723426, at *4 (N.D. Ill. Mar. 5, 2007).

SWI anticipates that Keener will testify only to his "speculation about Ms. Yip's supposed role with Super Wings," and that such speculation cannot establish admissibility of her statements as non-hearsay. *See* SWI Brief at 20. JLI argues that Yip informed Keener that she was an owner of SWI and that Keener will testify regarding Yip's statements to that effect. JLI Resistance at 12. The scenario described by JLI would be insufficient to establish that Yip is an agent or employee of SWI, because a hearsay

statement "does not by itself establish the declarant's authority" as an agent of the opposing party. *See* Fed. R. Evid. 801(d)(2). Nevertheless, it is premature to definitively conclude that JLI will be unable to present additional foundational evidence that Yip was an agent of SWI.

Accordingly, the court shall reserve ruling on the SWI Motion with respect to exclusion of extrinsic evidence regarding the 2008 agreement and statements by Yip.

## IV. CONCLUSION

In light of the foregoing, the JLI Motion (docket no. 54) is **GRANTED IN PART** and **DENIED IN PART** and the SWI Motion (docket no. 55) is **DENIED IN PART** and **RULING IS RESERVED IN PART**.

Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order. If during the presentation of evidence a party believes that a prohibited subject has become relevant or that the necessary predicates for admission have been established, the party may request an opportunity to argue for admissibility of the evidence outside the presence of the jury. Each ruling in this Order is binding on all parties.

**IT IS SO ORDERED**.

**DATED** this 22nd day of December, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

24